272 So.2d 131 (1972)
Edward JUSTICE, Petitioner,
v.
BELFORD TRUCKING COMPANY, INC., and the Florida Industrial Relations Commission, Respondents.
No. 41964.
Supreme Court of Florida.
December 20, 1972.
Rehearing Denied February 13, 1973.
*132 Paul Bernardini, of Stern & Bernardini, Daytona Beach, for petitioner.
Monroe E. McDonald, of Sanders, McEwan, Mims & McDonald, Orlando, and Kenneth H. Hart, Jr., Tallahassee, for respondents.
ERVIN, Justice.
We review by writ of certiorari a decision of the Industrial Relations Commission upholding an order of the Judge of Industrial Claims that claimant, Edward Justice, was an independent contractor and not an employee of respondent, Belford Trucking Company, Inc., and therefore was not entitled to workmen's compensation benefits because of an accident arising out of his relationship with Belford Trucking Company, Inc.
We find from our review that the decisions of the Judge of Industrial Claims and the Industrial Relations Commission are not supported by substantial competent evidence comporting with logic and reason that claimant was an independent contractor and not an employee of Belford Trucking Company, Inc.
The record for review, in addition to documents, depositions and reports, includes a pencilled narrative of the Judge of Industrial Claims of the hearing before him on the claim which the parties hereto stipulated could be substituted in lieu of transcribed evidence.
It appears therefrom that claimant is a 44-year-old truck driver. On June 10, 1968, claimant filled out respondent, Belford's, employment application form. The next day claimant and respondent entered into a two-page form contract furnished by respondent. Pertinent portions of which read:
"3. The Carrier (Respondent) shall have exclusive possession, control and use of the contractor's (Claimant's) equipment and shall assume responsibility in respect thereto to the extent required *133 by the rules and regulations of the Interstate Commerce Commission.
* * * * * *
"13. This contract may be terminated by either party without cause upon thirty days written notice to the other.
"14. In the event either party violates any terms of this contract, the other party shall have the right to immediately terminate this contract.
* * * * * *
"17. This contract shall be governed by the laws of the State of Florida both as to interpretation and performance. The parties intend to create by this contract the relationship of Carrier and Independent Contractor and not an employer-employee relationship. Neither the contractor nor its employees are to be considered the employees of the carrier at any time, under any circumstances or for any purposes. * * *"
On July 1, 1968 claimant entered into a written lease with respondent whereby claimant leased a trailer from respondent for five years, agreeing to pay $325; $300; $250; $250 and $225 each year, respectively, as rental. Under its terms, claimant agreed he would exclusively use the trailer during the rental period in the service of Belford. Claimant was given the right to purchase the trailer after leasing it for 60 months by paying $2875 to Belford. In event of default, respondent was authorized to pick up the trailer.
Thereafter, until the date of his industrial accident on May 19, 1969, claimant operated the trailer for carriage of freight as instructed by respondent's dispatcher. It appears undisputed in the narration of the Judge of Industrial Claims that during the time claimant operated the trailer a Mr. Weldon, of the Belford Trucking Company, "would call (claimant's home on an average of once a week) and leave instructions as to where and when (claimant) was to be to pick up a certain load, make certain deliveries, etc." Claimant considered the calls to be instructions or orders, not requests, and complied accordingly. Claimant testified respondent told him what to haul and when to do it; and added that when "he questioned one meager assignment, right on top of 1 or 2 others, and was told to accept it or be [terminated]." Respondent under the written contract had the right to terminate its relationship with claimant upon thirty days' notice without cause. In the event claimant violated the work rules of respondent, he could be terminated immediately.
Claimant testified that Belford Trucking Company, Inc., required him to replace his original truck with another to pull the leased trailer because his truck was not sufficiently serviceable.
He testified, according to the Judge of Industrial Claims' narrative, "His wages involved a percentage of the freight charge of the shipment. Sometimes [Belford Trucking Company] leased him to another carrier for a trip, but he had no control over it. At the time of the accident, he was bringing in a load of beef from Iowa, at the instruction of [Belford Trucking Company]."
He testified, according to the narrative, that he grossed between $40,000 and $50,000 in freight charges, netting about $15,000 per year for his percentage. That "He noticed that `W.C.' [Workmen's Compensation] was being taken out of his pay, and he asked a Mr. Denny [of Belford] what this was for and he said [claimant] was covered by workmen's compensation." Claimant also testified, "He filed income tax returns for 1968, & got W-2 forms from [Belford] w/some soc. sec. & income tax withheld."
The respondent through its president, Mr. Fauls, testified that drivers for their trucking company (including claimant) could refuse dispatches, but it was not suggested or recommended that refusals become a matter of course because the company did not particularly approve refusals.
*134 Following claimant's accident, respondent made all compensation payments up until the time a question arose as to whether repair of claimant's dentures broken in the accident was compensable. At that time respondent took the position claimant was not its employee and controverted the claim. A compensation hearing thereon ensued.
The Judge of Industrial Claims held that claimant was an independent contractor because the form contract claimant signed stated he was an independent contractor. The Judge set forth his reasons as follows:
"In making this finding, the undersigned finds that under the contract between the parties, this Claimant was an independent contractor, and not an Employee, which fact is specifically spelled out in paragraph 17 of said contract, wherein it states, `... The parties intend to create by this contract the relationship of Carrier and Independent Contractor and not an employer-employee relationship. Neither the Contractor nor its employees are to be considered the employees of the Carrier at any time, under any circumstances or for any purposes.'"
The Industrial Relations Commission affirmed the Judge of Industrial Claims in a short form order.
It appears to us that the decisions below must be reversed. In the case of Cantor v. Cochran, 184 So.2d 173 (Fla. 1966), we had a similar question for decision. There, we said:
"While the obvious purpose to be accomplished by this document was to evince an independent contractor status, such status depends not on the statements of the parties but upon all the circumstances of their dealings with each other."
In that case the respondent wholesalers owned a self-service wholesale grocery store. Small retailers came to the store to buy stock for their stores. The customers selected merchandise from shelves and loaded it onto dollies. The customers then checked out at a cash register and paid for their purchases. The claimant (Cochran) awaited at the register area and offered to help each purchaser load the purchases. The tips received by claimant from the purchasers were the only compensation paid for such service. Claimant was injured in 1964 when the trunk lid of an automobile he was loading fell across his back. Claimant had performed the related service since 1957. In 1962 claimant had signed at the wholesaler respondent's direction a statement to the effect claimant's work was "independent of and in no way under the control or direction of the Cantor Wholesale." The Deputy Commissioner found claimant was an independent contractor; not an employee. We quashed this determination quoting several criteria for ascertaining whether an independent contractor or employee relationship existed from 1 Restatement of Law Agency (2nd ed.) § 220 (Subsec. (2)) and 1 Larson, Workmen's Compensation Law, § 44.35. From these quotations we noted among other things that
"The power to fire (to terminate an employment) is the power to control."
We further noted in that case that claimant had no specialized skill in a distinct occupation, as for example, plastering or plumbing, indicative of an independent contract. There the dollies were supplied claimant by the wholesale concern and the claimant was engaged in the described loading work using the dollies over a period of some seven years. The described loading work was found to be a necessary incident  "a part of the regular business of the [wholesale concern.]"
In Taylor v. Williams (Fla. 1949), 40 So.2d 122, it was held that where evidence disclosed owner of sawmill hired trucker to haul logs and directed him where to go, owner paid for the timber, owned the skidder and some of the tools used by the logger and his crew, and supplied him with *135 money to meet his weekly payroll and paid the logging crew, it was established that the sawmill owner was the employer and liable for accidental death of member of logging crew and that deceased was not an employee of an independent contractor. See also, Lindsey v. Willis (Fla.App.1st), 101 So.2d 422.
In Magarian v. Southern Fruit Distributors, 146 Fla. 773, 1 So.2d 858, a fruit buyer who was employed by a packing company for an indefinite period, whose remuneration was based on number of boxes of fruit purchased by company which controlled determination as to what fruit should be purchased, price to be paid, time when it should be bought and delivered, was held not to be an independent contractor.
In a Florida Attorney General Opinion rendered in 1939 it was stated that a distributor for a bottling company who was required to collect and carry on accounts with customers, and to assume all losses that might occur in collections, and who agreed to obey company rules, regulations and requests in the use of a truck furnished him by the company for use in selling and marketing the company's products, and who was subject to company's control as to changes in his territory and route assignment, was an employee rather than an independent contractor. Annotation Florida Digest 11B, p. 216.
In Hicks v. Kemp, Fla. 1955, 79 So.2d 696, this Court indicated formal tests for determining whether independent contract status existed should not be overemphasized "because of the danger of giving legal sanction to an effort on the part of an employer to avoid provisions of the [Workmen's Compensation] Act by creating the appearance of employing only independent contractors when for all practical purposes a master-servant relationship actually exists." Subterfuges avoiding workmen's compensation coverage are particularly frowned upon by the courts.
We have carefully considered the various defenses of the respondent trucking company. They include evidence that the contract between claimant and respondent stipulates that claimant had the status of an independent contractor, not an employee. Respondent contends that because claimant owned the truck (tractor) and leased from Respondent the trailer and operated them in interstate commerce, his operation was subject to interstate commerce rules (specifically DOT Regulation No. 395.8 of the United States Department of Transportation); that claimant was independently governed in his operation by such rules and was not therefore under the control and direction of respondent. Respondent contends its control over claimant was simply to dispatch him on hauling trips and Respondent's only concern with claimant's method and manner of operating the truck was simply to have its cargoes properly delivered. Respondent's witness testified that claimant was not required to drive the truck himself, but could hire other drivers to operate it. Respondent's witness testified that it did not provide workmen's compensation coverage for claimant but for his assistant drivers as a protective service and made deductions from the account of claimant only for that purpose. Its witness claimed a mistake was made by its compensation servicing agency, United Transportation Adjustors, in first furnishing benefits to claimant after his injury, which were disallowed upon more thorough investigation.
It does not appear to us that respondent had successfully challenged the fact that its relationship with claimant, though declared to be an independent contract in the contract document, was in reality an employment. Claimant was continuously subject to call or dispatch by Belford; this directional control over his truck-trailer hauling operation continued several months without interruption until he was injured. Belford through the lease arrangement provided claimant with the trailer for his *136 hauling operation, limiting it, however, exclusively to the service of Belford. Deductions were made by Belford from claimant's earnings as a truck operator for Workmen's Compensation premiums. Belford contends such deductions were made only for claimant's assistant drivers. However, this after-injury contention is inconsistent with the fact that for some time compensation benefits were paid claimant by Belford's compensation servicing agent. The gross earnings from claimant's freight haulings inured to Belford's trucking business from which claimant derived his percentage. There was no evidence showing that claimant had any particular skill or speciality other than that of an ordinary truck driver employed by a carrier in the trucking business. He had no franchise or certificate of necessity and convenience to operate as a carrier. The fact that claimant was subject to the interstate commerce rules of DOT for safety purposes in the operation of his truck is not significant in determining his status. The same rules would apply to all employee truck drivers operating trucks in interstate commerce. Compare Crews v. C.R. Stevenson Trucking Brokerage, Fla., 224 So.2d 260.
Looking through form to substance, the contract document alone did not create a true independent contract relationship. The circumstances indicated claimant was merely a truck driver employee of Belford in its regular trucking business, under its direction and control as to all hauling trips, similar to any other truck driver employed by an interstate trucking company. He was subject to termination at the discretion of Belford. As a truck driver in the regular trucking business of Belford, he used the trailer supplied him by Belford in exclusively carrying out its orders as to freight hauled under its franchise and remitted to it the gross earnings derived from freight charges. The Judge of Industrial Claims in centering his finding that claimant was an independent contractor solely upon the language of the contract failed to take into account "all the circumstances of their [claimant and Belford] dealing with each other" (Cantor v. Cochran, supra; Taylor v. Williams, supra, and Magarian v. Southern Fruit Distributors, supra), and therefore did not recognize the employment relationship that actually existed.
The decisions below are quashed with direction that on remand further proceedings be in accord herewith.
It is so ordered.
McCAIN and DEKLE, JJ., concur.
ROBERTS, C.J., concurs specially with Opinion.
CARLTON and BOYD, JJ., dissent.
MELVIN, Circuit Court Judge, dissents with Opinion.
ROBERTS, Chief Justice (concurring specially).
I concur in the opinion and judgment for reasons hereafter stated. The claimant was informed by an agent of Belford Trucking Lines that he was covered by workmen's compensation. The expense of the same was taken from his pay. Furthermore, Belford had paid social security on the claimant and had withheld a portion of his income as tax withheld.
MELVIN, WOODROW M., Circuit Judge (dissenting).
I respectfully dissent.
We do not have here the situation of a grocery-bag person whose sole income were tips from customers, as in Cantor v. Cochran. Neither do we have the equivalent of a truck driver hauling logs for a saw mill, as in Taylor v. Williams, or that of a fruit buyer as in Magarian v. Southern Fruit Distributors. We have here the rather simple proposition of whether an American *137 citizen of mature age and judgment, who owns a tractor-truck equipped to haul in interstate or intrastate commerce, may lawfully contract as to the moving of his equipment in such commerce, mutually agree with his contracting party for acceptable compensation, and as to his status as an independent contractor.
I perceive the state of our law to be that such persons may so exercise their right to contract and to be contracted with.
Therefore, I would discharge the writ.