629 So.2d 1026 (1993)
Ralph PARKER, Althea Parker and Ricky Parker, Appellants,
v.
DOMINO'S PIZZA, INC., Jeffrey Todd Hoppock, J & B Enterprises, Inc., d/b/a Domino's Pizza, and Earl Gene Hart, Appellees.
Nos. 92-2056, 92-2630.
District Court of Appeal of Florida, Fourth District.
December 29, 1993.
Rehearing, Rehearing and Certification Denied February 9, 1994.
James L. Torres, Searcy Denney Scarola Barnhart & Shipley, P.A., and Philip M. Burlington, Edna L. Caruso, P.A., West Palm Beach, for appellants.
Richard S. Womble and Richard B. Mangan, Jr., Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, for appellees.
Rehearing, Rehearing En Banc and Certification Denied February 9, 1994.
HERSEY, Judge.
Appellants, Ralph and Ricky Parker, sought damages for the injuries they sustained while attempting to provide aid to victims injured in an automobile accident. The complaints filed in those consolidated actions alleged that Jeffrey Todd Hoppock (Hoppock), while within the course and scope of his employment delivering pizza for J & B Enterprises, Inc., d/b/a Domino's Pizza (J & *1027 B Enterprises), operated a vehicle in a reckless, negligent and careless manner, causing it to strike another vehicle. The Parkers, who were both pedestrians at the time of the incident, allege that they were injured when a third vehicle hit them while they were helping the victims of the accident caused by Hoppock. Included in one of the complaints was a claim for loss of consortium by Althea Parker. It was further alleged that at the time of the accident J & B Enterprises and Hoppock, employer and employee, were operating as the agents, apparent agents, servants and/or employees of Domino's Pizza, Inc. (Domino's), and that Domino's exercised control over all of the activities of its franchisee, J & B Enterprises, and thus was vicariously liable for the negligence of J & B Enterprises and Hoppock.
Domino's moved for summary judgment based upon its position that at the time of the accident Hoppock was an employee of J & B Enterprises, not Domino's, and that neither J & B Enterprises nor Hoppock were employees of Domino's nor acting within the scope of any employment or agency relationship with Domino's. This position was supported by an affidavit of Domino's National Director of Franchise Services. The trial court granted summary judgment.
The issue on appeal is whether there were genuine, material issues of fact precluding summary judgment: more specifically, the issue is the nature of the relationship between the franchisee and the franchisor.
The trial court determined that, as a matter of law, J & B Enterprises was an independent contractor, as provided in paragraph forty-five of the franchise agreement between the parties. Consequently Domino's could not be held vicariously liable for the negligence of J & B Enterprises, its agents and employees. The trial court's conclusion was based upon an examination of the franchise agreement, an operating manual, an affidavit, testimony, and memoranda submitted by the parties.
It is clear that the nature and extent of the relationship of parties said to occupy the status of principal and agent presents a question of fact, Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA 1991), cause dismissed, 589 So.2d 291 (Fla. 1991), and is not controlled by descriptive labels employed by the parties themselves. See Nazworth v. Swire Florida, Inc., 486 So.2d 637 (Fla. 1st DCA 1986). See also Singer v. Star, 510 So.2d 637 (Fla. 4th DCA 1987).
Whether one party is a mere agent rather than an independent contractor as to the other party is to be determined by measuring the right to control and not by considering only the actual control exercised by the latter over the former. Nazworth, 486 So.2d at 638. If the employer's right to control the activities of an employee extends to the manner in which a task is to be performed, then the employee is not an independent contractor.
In Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla. 2d DCA 1960), the court explained:
Where the employee is merely subject to the control or direction of the employer as to the result to be procured, he is an independent contractor; if the employee is subject to the control of the employer as to the means to be used, then he is not an independent contractor.
This court previously considered the question of whether a particular franchisee was an independent contractor in the case of Ortega v. General Motors Corp., 392 So.2d 40 (Fla. 4th DCA 1980). In that case we analyzed the underlying documentation to determine the degree of control retained by General Motors over its dealer, South Bay, and concluded that the latter was an independent contractor. Appellee in the present case suggests that there were fifteen factors in Ortega which have parallels in the present case and that comparison of those factors requires an affirmance. We disagree.
The relationship between Domino's and J & B Enterprises is established by a franchise agreement and an operating manual. We have summarized the requirements that best seem to illustrate the extent of control Domino's retains over the performance of its franchisees.
The "preambles" section of the franchise agreement states in relevant part:

*1028 Franchisee has applied to the Company for a franchise to operate a Domino's pizza store selling the products and services authorized and approved by the Company and utilizing the Company's business format, methods, specifications, standards, operating procedures, operating assistance, advertising services and the Marks.
The franchise agreement itself contains, inter alia, the following:
(1) Sales quotas;
(2) Franchise renewal dependent upon compliance with Domino's specific prescriptions;
(3) Location sites and guidelines for changing locations;
(4) Domino's approval of site and architectural plans, including the dimension requirements for all furniture, fixtures, and equipment;
(5) Specific rules for pizza and beverage preparation, including the minimum standards for delivery, performance, appearance;
(6) Specific signage and decorating requirements;
(7) Guidelines for a mandatory training program completion of which is a precondition to employment;
(8) A reservation of the rights Domino's retains to advise the franchisee on improvements, food preparation, hiring, advertising and general operational procedures;
(9) Company inspections;
(10) A prohibition on selling any products or services other than those authorized by Domino's;
(11) A requirement that delivery service zones may not extend to areas where pizza could not feasibly be delivered within 30 minutes;
(12) Specifications and quality standards by which every single item in the restaurant must abide, including though not limited to the pizza ingredients, packaging, uniforms, cleaning supplies and advertisements;
(13) That each store must contribute 3% of its weekly royalties to a fund administered by Domino's for its advertising and promotions;
(14) Strict advertising restrictions and requirements;
(15) Strict Domino's prescribed book-keeping requirements;
(16) That each franchisee submit weekly, monthly and annual reports of their sales and profits, all which are open to audit by Domino's to check for understatements in earnings;
(17) Specifications for operating procedures including but not limited to employee grooming, delivery techniques, advertising, signage, handling of customer complaints, etc.
(18) That the franchisee will abide by the Domino's operating manual;
(19) That all new ideas or improvements in products or services conceived by franchisee must be divulged to Domino's without compensation;
(20) Managers must spend no less than 40 hours per week at the store;
(21) The franchisee is responsible for obtaining motor vehicle and comprehensive general liability insurance naming Domino's as an additional insured;
(22) That Domino's has control over the use of trademarks, and may prohibit a franchisee from using them provided the franchisee is compensated for costs;
(23) The franchisee must pay Domino's a 5 1/2% royalty fee of the store's weekly net sales (the franchisee is, however, given the freedom to determine the prices for the products and services it sells);
(24) Random inspections of the inventory, records and assets which may be conducted any time during business hours.
The second item of documentary evidence demonstrating Domino's control over its franchisees is its operations manual. As "Domino's Concept and Objectives," the manual states:
Our phrase depicts the Domino's concept, "The Domino's People are Pizza People, Period." Thus, the Domino's purpose is: make the finest pizza possible and deliver it fast, hot, and free. To fulfill this purpose we must meet the following objectives: *1029 To the customer we constantly offer a pizza of the highest quality. Specifically, every pizza is hot, tasty, and good-looking. Ingredients are in the proper proportion to insure a balance of flavor. They are also in the proper amounts to insure a fair value. The product is consistant (sic) throughout the chain. Service is fast and courteous. Specifically, a Domino's pizza is delivered within 30 minutes after the order is taken. Pick-up pizzas are ready in 10 minutes. At all times, the customer receives courteous service ... customer is assured that his pizza is prepared only from wholesome ingredients, in sanitary facilities, by clean personnel.
The manual which Domino's provides to its franchisees is a veritable bible for overseeing a Domino's operation. It contains prescriptions for every conceivable facet of the business: from the elements of preparing the perfect pizza to maintaining accurate books; from advertising and promotional ideas to routing and delivery guidelines; from order-taking instructions to oven-tending rules; from organization to sanitation. The manual even offers a wide array of techniques for "boxing and cutting" the pizza, as well as tips on running the franchise to achieve an optimum profit. The manual literally leaves nothing to chance. The complexity behind every element of the operation gives new meaning to the familiar slogan that delivery is to be, "Fast, Hot and Free."
The foregoing leads us to the self-evident conclusion that it was error to determine as a matter of law that Domino's does not retain the right to control the means to be used by its franchisee to accomplish the required tasks. At the very least a genuine and material question of fact is raised by the documentation.
We reverse and remand for such other and further proceedings as may be appropriate.
REVERSED AND REMANDED.
GUNTHER and WARNER, JJ., concur.