971 So.2d 141 (2007)
FLORIDA STATE ORIENTAL MEDICAL ASSOCIATION, INC., ("FSOMA"), Appellant,
v.
Stephen Marc SLEPIN, Richard Freiberg and Charlotte James, Appellees.
No. 1D06-5296.
District Court of Appeal of Florida, First District.
December 5, 2007.
Rehearing Denied January 8, 2008.
*142 Sorraya Solares and Nancy C. Ciampa of Carlton Fields, P.A., Miami; Dean A. Morande of Carlton Fields, P.A., West Palm Beach; Daniel Hernandez, Tallahassee, for Appellant.
Stephen Marc Slepin of Maddox Horne, pro se, Tallahassee; Richard Freiberg, pro se, Pompano Beach; Charlotte James, pro se, Homestead.
PADOVANO, J.
This is an appeal by a corporation from a judgment awarding attorney fees to a private lawyer who claimed to be providing legal services on the corporation's behalf. Because there is no evidence that the attorney had actual or apparent authority to represent the corporation in the matter that is the subject of the fee award, we reverse with directions to enter a judgment for the corporation.
The appellant, Florida State Oriental Medical Association, Inc., is a nonprofit corporation organized to promote acupuncture and other forms of oriental medicine. Charlotte James was the president of the company and Richard Freiberg was the vice president. They also served as two of the corporation's nine directors. The appellee, Steven Slepin, is an attorney in private practice.
The present controversy arose in the wake of an internal dispute over Mr. Freiberg's activities. He wanted to teach a course on a certain medical procedure after he had lobbied the legislature for a law authorizing oriental medical specialists to perform the procedure. Some members of the board of directors were concerned that these objectives might be in conflict with each other. Fearing that the alleged conflict might expose the corporation to liability, they proposed to obtain a legal opinion on the issue.
Mr. Freiberg did not wish to seek a legal opinion, and Ms. James supported him on this point. A bitter split soon developed among the board members, with six of the nine members in favor of seeking legal advice and conducting an ethics investigation. Freiberg and James were joined by one other director in the minority of three. Eventually, all communication between the two camps became impossible, *143 and the business of the corporation came to a standstill.
Amid growing animosity, the board ultimately voted to obtain a legal opinion and to conduct an ethics investigation into the possible conflict. A series of special or emergency board meetings ensued. Although both James and Freiberg were invited to the meetings, they did not attend. In a meeting held on January 6, 2002, the six members of the board voted to remove Freiberg from his position as vice president. Later, on January 26th, the six members voted to remove James from her position as president.
Freiberg retained attorney Slepin to file a defamation suit on his behalf against the six board members. James also decided that she would retain Slepin as her lawyer in connection with her removal as president. Slepin then began to advise Freiberg and James on how they could suspend the six board members, reconstitute the board of directors, and retake control of the corporation.
In the beginning, the parties understood that Slepin was representing James and Freiberg in their individual capacities. Slepin had represented the corporation before in unrelated matters, but he informed Freiberg that their agreement for legal services would "kill" his representation of the corporation, and he made it clear that he would have to bill Freiberg for "personal representation." Freiberg wrote Slepin a check in the amount of $1,500.00, drawn on his personal account.
On January 23, 2002, James met with Freiberg and the third board member in the minority. Acting ostensibly as the corporation's ethics committee, they found the six board members who opposed them to be in violation of their duties. They voted to rescind the board memberships of those six members and to reconstitute the board of directors. On the next day, Slepin advised them that James should take control of the corporation's bank accounts from the treasurer, which she did.
The six board members took the position that the suspensions were invalid, because the by-laws of the corporation specify that the ethics committee has no authority to suspend a director. According to the by-laws, the committee may make a recommendation for suspension, but the recommendation must be ratified by a majority of the board before it has any effect. Based on their belief that the attempted suspensions were unlawful, the six members continued to assert their authority as the governing board of the corporation.
It soon became apparent that Freiberg was unable to pay Slepin from his personal funds, but by then James had control of the corporate checking account. Slepin made it known that he would like to represent the corporation, in addition to James and Freiberg individually, and wrote in an email to Freiberg, "[s]hort of representation of [the corporation], I can't give a whole lot more time to this drama." Freiberg responded that he would suggest to the "reconstituted board" that Slepin represent their version of the corporation. Slepin replied by stating that he would require a $10,000.00 retainer. The retainer was to cover 40 hours of work after which the corporation would be billed $250.00 per hour plus expenses.
The three directors purporting to act as the board formally authorized James to retain Slepin, and on January 31, 2002, James executed a retainer agreement with Slepin on behalf of the corporation. She signed a $10,000.00 retainer check from the corporation's legal defense fund. Using this retainer, Slepin filed a lawsuit against the six board members. The plaintiffs named in the case were James, Freiberg and the corporation.
*144 The six members of the board retained attorney Greg Cesarano to represent the corporation. Cesarano sent a letter to Slepin, stating that the six board members constituted a majority of the duly elected voting board members, and therefore they were the true board of directors of the corporation. In the letter, he advised Slepin that the board did not endorse James and Freiberg's actions, nor did it authorize Slepin to represent the corporation.
James, Freiberg and the third board member resigned by the middle of March, 2002, and the so-called reconstituted board stopped meeting. The retainer had been exhausted by this time, as well, and the bills Slepin was sending to James were not being paid. Because his fees were going unpaid, Slepin moved to withdraw the following May. The trial court granted the motion, and, in September of 2002, the lawsuit was voluntarily dismissed.
Slepin then filed suit to recover the unpaid legal fees incurred in the defamation action against the six board members. He sought to recover fees not only from James and Freiberg individually, but also from the corporation. He claimed that he had represented the corporation in the defamation action and that he had billed the corporation for work done on its behalf. The corporation defended on grounds that Freiberg and James lacked authority to hire Slepin on behalf of the corporation.
Following a bench trial, the trial court rendered a judgment in Slepin's favor. The court found that Slepin had been hired to represent the corporation in the defamation case, that he had billed the corporation for his earned fees and that the fees remained unpaid. Based on these findings, the trial court awarded Slepin damages against the corporation in the amount of $25,288.16, and damages against Freiberg and James in the amount of $2,388.34 each. The part of the judgment that pertains to Freiberg and James individually is not at issue here. This appeal was filed by the corporation.
We begin with several important principles of corporation law. A corporation is managed by its board of directors or by its officers acting under the direction and control of the board. This is generally true as a matter of corporation law throughout the United States, see Harry G. Henn and John R. Alexander, Laws of Corporations, §§ 203, 219 (1983), and it is true as a matter of Florida law as to both corporations for profit and not-for-profit. See § 607.0801 and 617.0801, Fla. Stat. (2007). The officers of a corporation are selected and removed by the directors.
An officer generally does not have authority to remove one of the directors. That may be done only by the shareholders in the case of a corporation for profit, see § 607.0808, Fla. Stat. (2007), or by the voting members in the case of a not-for-profit corporation. See § 617.0808, Fla. Stat. (2007). While these basic principles might be subject to exceptions stated in the corporate charter or by-laws, it does not appear that any exception would apply here.
In this corporation, like most others, a minority faction of the board of directors cannot take control simply by voting to remove the directors in the majority. Yet that is what Freiberg and James attempted to do. They convened an "ethics committee" to evaluate the conduct of the six board members in the majority, concluded that these members had committed violations of the corporation's policies, announced that they were removed from office, and then convinced themselves that they were in control of the corporation as the newly reconstituted board. As much as Freiberg and James may have wished that they had the power to take these *145 actions, they did not. The board members in the majority continued to control the corporation.
The judgment in this case necessarily rests on the premise that James had authority as an agent of the corporation to retain Slepin to perform legal services on the corporation's behalf. But that premise is not correct. There is no competent substantial evidence in the record to support a finding that James had either actual or apparent authority to bind the corporation by signing a retainer agreement with Slepin. All of the evidence demonstrates that she did not have such authority. Consequently, the retainer agreement did not create an obligation on the part of the corporation.
There can be little doubt that James lacked the actual authority to retain Slepin as the corporation's lawyer. A finding of actual authority would require evidence that the principal acknowledged the agent's power, that the agent accepted the responsibility of representing the principal, and that the principal retained control over the agent's actions. See Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003); Goldschmidt v. Holman, 571 So.2d 422 (Fla.1990); Restatement (Second) of Agency § 1 (1957). In the present case, James had been removed from office five days before she signed the retainer agreement with Slepin. From that point on, she had no actual authority to take any action on behalf of the corporation, much less to sign a contract on its behalf.
Nor did James have apparent authority to act for the corporation. Apparent authority arises under Florida law only when the principal creates the appearance of an agency relationship. See Lensa Corp. v. Poinciana Gardens Ass'n, 765 So.2d 296 (Fla. 4th DCA 2000). It does not depend on representations by the person claiming to be an agent or on the subjective belief of the person dealing with the purported agent. See Jones v. Tallahassee Mem. Reg. Healthcare, Inc., 923 So.2d 1245 (Fla. 1st DCA 2006). Rather, it is based entirely on the acts or omissions of the principal. As the court explained in Roessler v. Novak, 858 So.2d 1158, 1161 (Fla. 2d DCA 2003), apparent authority is authority that a principal "knowingly tolerates or permits," or that the principal "by it actions or words holds the agent out as possessing."
An agency relationship based on apparent authority exists only if the party asserting the existence of the relationship proves all three of the following elements: (a) a representation by the purported principal; (b) reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation. See Mobil Oil Corp. v. Bransford, 648 So.2d 119 (Fla.1995). The record in this case does not support the first element, as there is no evidence that the corporation held James out as its agent.
Apparent authority might be a viable theory of recovery if Slepin reasonably believed that James had authority to retain him as the corporation's lawyer, but that assumption is not reasonable. This is not a case in which a lawyer has been engaged to file a suit on behalf of a corporation against a third party, only to find out later that the officer signing the retainer agreement lacked authority. One faction of the board of directors retained Slepin purportedly on behalf of the corporation to sue another faction of the board. The nature of the engagement was enough in itself to put him on notice that the people hiring him might not speak for the corporation.
*146 In these circumstances, it would be illogical to conclude that James had apparent authority to act on behalf of the corporation. To do so, we would have to accept the premise that Slepin reasonably believed the corporation had authorized James to retain him on its behalf to file suit against a majority of its own directors. This is a self-defeating proposition. As we have explained, the power to operate and control a corporation resides with its board of directors. A majority of the board of directors represents the will of the corporation. Surely the corporation did not intend to sue itself.
The assumption that James was authorized on behalf of the corporation is not only unreasonable under the circumstances, it is also refuted by direct evidence. When Slepin first agreed to represent Freiberg and James, he acknowledged that he would no longer be able to represent the corporation. It was only when it appeared that individual representation was not economically feasible that he brought up the idea of representing the corporation under the authority of the newly reconstituted board of directors. By then he knew that Freiberg and James had been removed from office by a majority of the board. Although it was obvious from the circumstances that James did not represent the corporation, a lawyer representing the six members in the majority of the board of directors also wrote to Slepin and categorically informed him that James was not authorized to act on behalf of the corporation.
Because the evidence presented in this case does not support a finding that James had actual or apparent authority to act on behalf of the corporation, the retainer agreement she made with Slepin does not bind the corporation. Accordingly, we reverse with instructions to enter a judgment for the corporation.
Reversed.
WOLF and POLSTON, JJ., concur.