993 So.2d 142 (2008)
Danny DEL PILAR, Appellant,
v.
DHL GLOBAL CUSTOMER SOLUTIONS (USA), INC., a foreign profit corporation, Appellee.
No. 1D07-5140.
District Court of Appeal of Florida, First District.
October 24, 2008.
*144 Brian J. Lee and Carl Scott Schuler of Law Offices of Carl Scott Schuler, P.A., Jacksonville, for Appellant.
Michael L. Glass and Thomas J. Tollefsen of Fulmer, LeRoy, Albee, Baumann & Glass, Jacksonville, for Appellee.
KAHN, J.
In this personal injury action arising from an auto accident, appellant Danny Del Pilar appeals a summary judgment entered for appellee, the U.S. arm of international shipping firm DHL. In the order granting summary judgment, the trial court concluded that a company providing local package pick-up and delivery services for DHL customers is an independent contractor for whose alleged negligence DHL cannot be vicariously liable. We reverse that finding because, on this record, determination of the existence, or not, of agency relationship presents a factual matter for the jury. We do not disturb the trial court's conclusions as to apparent agency.

BACKGROUND
Appellant sustained injuries when his car collided with a delivery van painted in the widely recognized DHL livery, driven by a driver clad in DHL uniform and laden with packages destined for DHL customers in Duval County and beyond. Discovery in the negligence lawsuit stemming from the accident, revealed the van was owned not by DHL, but by Johnny Boyd, a driver for Silver Ink, Inc., a local company that was responsible at the time for picking up, sorting, and delivering all DHL packages in metropolitan Jacksonville. DHL, whose primary business focuses on shipping packages via air around the world, represented to both this court and the trial court that it has no capability to pick up or deliver local packages in Duval County and that, at the time of the accident, it relied exclusively on Silver Ink to provide such local services.
Accordingly, appellee's agreement with Silver Ink essentially delegated to Silver Ink the responsibility to service DHL customers in the Jacksonville area. The contract identified Silver Ink as an "independent contractor" and provided that "the manner and means by which Contractor performs the services shall be at Contractor's sole discretion and control and are Contractor's sole responsibility." The agreement also, however, recited an exhaustive and detailed list of procedures that Silver Ink employees were to follow in processing, picking up, and delivering packages, and contained an indemnity provision pursuant to which Silver Ink would indemnify DHL in the event Silver Ink *145 lost or damaged packages bound for DHL's customers. The agreement conferred upon either party the power to terminate in the event of the other party's breach.
Silver Ink employees were contractually required to "wear a DHL uniform and properly display the DHL Marks [sic] and uniform in a clean, professional, and businesslike manner"; the contract specified the particular articles of clothing and accessories considered part of the DHL uniform, the purchase of which was funded by DHL. Silver Ink was required to submit to unannounced operational inspections and audits at DHL's sole discretion and was required to maintain a fleet of delivery vans operated in DHL livery, designed and placed on the vehicles in strict accordance with specifications established by DHL. Deposition testimony filed with the trial court established that Silver Ink's operational hub was co-located with DHL's Duval County facility and that DHL employees monitored and reviewed Silver Ink operations on a daily basis.
Boyd, working for Silver Ink on the DHL contract, was shuttling DHL packages when the accident occurred. In the lawsuit below, appellant's last amended complaint named as defendants appellee, Boyd, Silver Ink, its insurer, and Silver Ink executives Greg Abell and Madeline Joiner. Among the various claims in the complaint were one count alleging that DHL was vicariously liable for Silver Ink's negligence as a principal with close control over its agent, and another count alleging that DHL was vicariously liable for Silver Ink's negligence because Silver Ink held itself out as DHL's agent and acted under DHL's apparent authority. DHL, moving for summary judgment, argued Silver Ink was merely an independent contractor.
After hearing argument from both parties, the trial court concluded that Silver Ink was an independent contractor. In a written order that followed the summary judgment hearing, the court wrote:
As a matter of law, this Court rules that the Cartage Agreement in place between DHL and Silver Ink establishes by its terms that Silver Ink, Inc. was an independent contractor of DHL. Therefore, based on the terms of the Cartage Agreement, DHL is not liable for the negligence of Silver Ink and/or its drivers under the theories against DHL set forth in Plaintiff's claims.
In this appeal, appellant argues, first, that the trial court erred in concluding Silver Ink was appellee's independent contractor and, second, that appellee is liable to appellant under the doctrine of apparent authority. We reject the latter argument, but we find merit in the first and reverse on that basis.

ANALYSIS
Appellant argues the trial court erred in concluding, as a matter of law, that Silver Ink was an independent contractor for whose negligence appellee is not vicariously liable. As appellant challenges a summary judgment, we consider this issue de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Generally, a principal is not vicariously liable for the negligence of its independent contractor, but the principal is liable for the negligence of its agent. See generally Fla. Power & Light Co. v. Price, 170 So.2d 293 (Fla.1964). Whether one laboring on behalf of another is a mere agent or an independent contractor "is a question of fact ... not controlled by descriptive labels employed by the parties themselves." Parker v. Domino's Pizza, Inc., 629 So.2d 1026, 1027 (Fla. 4th DCA 1993) (internal citations omitted); see also *146 Font v. Stanley Steemer Int'l, Inc., 849 So.2d 1214, 1216 (Fla. 5th DCA 2003) (noting that question of status "is normally one for the trier of fact to decide").
A particularly significant factor in the determination of status is "the degree of control exercised by the employer or owner over the agent. More particularly, it is the right of control, and not actual control, which determines the relationship between the parties." Nazworth v. Swire Fla., Inc., 486 So.2d 637, 638 (Fla. 1st DCA 1986) (internal citations omitted); see generally Restatement (Second) of Agency § 220(2)(a) (1958); Harper ex rel. Daley v. Toler, 884 So.2d 1124, 1131 (Fla. 2d DCA 2004) (observing that extent of principal's control is "most important factor"). "If the employer's right to control the activities of an employee extends to the manner in which a task is to be performed, then the employee is not an independent contractor," but rather is an agent for whose negligence the principal is vicariously liable. Parker, 629 So.2d at 1027; see also Cawthon v. Phillips Petroleum Co., 124 So.2d 517, 519 (Fla. 2d DCA 1960).
In most cases, the terms of a contract between the parties is a pertinent index of the principal's right of control and should factor heavily into the inquiry, "unless other provisions of the agreement, or the parties' actual practice, demonstrate that it is not a valid indicator of status [or] ... belie the creation of the status agreed to by the parties." Keith v. News & Sun Sentinel Co., 667 So.2d 167, 171 (Fla.1995). In that case, "the actual practice and relationship of the parties should control." Id.
Elements of control that tend to suggest a relationship in which the principal is vicariously liable for the agent's negligence include, but are not limited to, (1) the principal's right to control the agent's use of the principal's trademarks, Font, 849 So.2d at 1217; Parker, 629 So.2d at 1028-29; (2) reservation to the principal of the unilateral right to prohibit the agent from working on behalf of competitors, Font, 849 So.2d at 1217; Bowdoin v. Anchor Cab, 643 So.2d 42, 44 (Fla. 1st DCA 1994); Parker, 629 So.2d at 1028-29; (3) a requirement that the agent's employees must undergo training before they work on the principal's behalf, Font, 849 So.2d at 1217; (4) a requirement that the agent perform services using only equipment selected pursuant to the principal's specifications, id.; (5) a requirement that the agent, when working on behalf of the principal, use a vehicle with the principal's logo, placed according to parameters established by the principal, id.; (6) a requirement that the agent adhere to customer-service procedures established by the principal, id.; Parker, 629 So.2d at 1028; and (7) a requirement that the agent submit to inspections conducted at the principal's discretion, Parker, 629 So.2d at 1028.
Reversal of a summary judgment based upon the trial court's legal characterization of the contractual relationship between a principal and agent is appropriate where "the terms of the contract appear to impose a number of conditions and limitations upon [the agent] which ... create a factual dispute as to [the parties'] status, thus precluding summary judgment." DeBolt v. Dep't of Health & Rehab. Servs., 427 So.2d 221, 226-27 (Fla. 1st DCA 1983)(footnote omitted); cf. Carrazana v. Coca Cola Bottling Co., 375 So.2d 345, 346 (Fla. 3d DCA 1979) (in analogous case involving presumption that delivery truck with corporate logo is operated by company, writing, "[W]e think that the jury had the right to draw the common sense conclusion ... that what looked and acted like a Coca Cola truck was a Coca Cola truck owned and operated by the `Coca Cola Bottling Company'").
*147 Here, the contract between appellee and Silver Ink certainly recites in conclusory terms the status of independent contractor; it identifies Silver Ink as an independent contractor and provides that "the manner and means by which Contractor performs the services shall be at Contractor's sole discretion and control and are Contractor's sole responsibility." This observation does not conclude the matter.
When we look, as we must, more deeply than the agreement's conclusory language, we find that, like provisions of the franchise agreement at issue in Parker, the balance of DHL's contract with Silver Ink "leaves nothing to chance." Parker, 629 So.2d at 1029. Somewhat inconsistently with the conclusory language purporting to confer broad discretion upon Silver Ink to fulfill its operational obligations, subsequent provisions list specific procedures and protocols that Silver Ink employees are to follow when picking up, sorting, and delivering DHL packages; everything from the process of scanning packages into DHL's tracking system to procedures for redelivery after unsuccessful delivery attempts is set out in detail in the agreement. Shippers and recipients are "DHL customers," and the agreement contains an indemnity provision requiring Silver Ink to indemnify DHL for damages stemming from packages lost or damaged due to Silver Ink's negligence, suggesting that DHL intends, in the first instance, to answer directly to its customers. The contract requires Silver Ink employees to "wear a DHL uniform and properly display the DHL Marks and uniform in a clean, professional, and businesslike manner," with further specification of the particular apparel considered part of the DHL uniform. Silver Ink must operate delivery vehicles painted in the DHL livery and must submit to unannounced operational inspections and audits at DHL's sole discretion. Silver Ink must pick up and deliver packages at times requested by DHL's customers pursuant to DHL's advertised guarantees.
Even if the analysis were limited to the terms of the contract itself, the facts in this case are susceptible of reasonably differing inferences as to the quantum of control reserved by DHL. The trial court erred in concluding, as a matter of law, that Silver Ink was appellee's independent contractor. The question of DHL's control over Silver Ink operations should go to the jury. See, e.g., Parker, 629 So.2d at 1029 (holding that "[a]t the very least a genuine and material question of fact is raised by the documentation [of the principal-agent relationship]" and that question should be resolved by jury); DeBolt, 427 So.2d at 226-27.
We reject appellant's claim that DHL is vicariously liable for Silver Ink's alleged negligence under the doctrine of apparent authority. The doctrine is rooted in the policy "that a principal should be estopped to deny the authority of an agent when the principal permitted an appearance of authority in the agent and, in so doing, justified a third party's reliance upon that appearance of authority as if it were actually conferred upon the agent." Roessler v. Novak, 858 So.2d 1158, 1161 (Fla. 2d DCA 2003). We cannot find that appellant, who, by misfortune and happenstance, was involved in an auto accident with a van operated by appellee's agent, relied on the apparent manifestation of the agency relationship, as required by case law. See, e.g., Fla. State Oriental Med. Ass'n, Inc. v. Slepin, 971 So.2d 141, 145 (Fla. 1st DCA 2007); Mobil Oil Corp. v. Bransford, 648 So.2d 119 (Fla.1995); Roessler, 858 So.2d at 1161. The doctrine of apparent authority is inapposite to this case and cannot serve as a basis for appellant's *148 recovery in tort against DHL under these circumstances.
Because the factual issue of Silver Ink's status presents a jury question, the summary judgment for appellee is REVERSED.
LEWIS and ROBERTS, JJ., concur.