FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2025-0015
_____

JEFFREY JAMES,

Appellant,

v.

ABRAHAM HERNANDEZ, JR.,
individually, PREMIER
CONSTRUCTION-RESIDENTIAL,
LLC, d/b/a PREMIER FINE
HOMES, a Florida Limited
Liability Company, and
PREMIER WATERPROOFING &
PAINTING, a Florida Limited
Liability Company,

Appellees.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

May 20, 2026

ROWE, J.

Jeffrey James appeals from a final summary judgment entered for Premier Construction-Residential, LLC (Premier) in James' negligence action against the company. James was injured

while riding his bicycle near the intersection of Fletcher Oaks Road and Pedrick Road in Tallahassee. James collided with a vehicle driven by Abraham Hernandez Jr. and sustained serious injuries from the collision.

Hernandez owned Premier Waterproofing & Painting (PWP), a painting subcontractor for Premier. At the time of the accident, Hernandez was traveling between Premier job sites. James sued Hernandez, PWP, and Premier. James asserted that Hernandez was Premier's agent and Premier was thus vicariously liable for Hernandez's actions. Premier disagreed, asserting that Hernandez was an independent contractor and not its agent. Premier moved for summary judgment. The trial court granted the motion and entered final summary judgment for Premier. We affirm.

## I.

This court reviews de novo an order granting summary judgment. *Smith v. Westdale Asset Mgmt., Ltd.*, 353 So. 3d 108, 110 (Fla. 1st DCA 2022). To obtain summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "The test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Anderson v. Sch. Bd. of Escambia Cnty.*, 416 So. 3d 427, 431 (Fla. 1st DCA 2025) (quoting *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021)),

Even so, to establish the existence of a genuine issue of material fact, it is no longer "plausible to maintain that 'the existence of *any* competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the "slightest doubt" is raised.'" *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 76 (Fla. 2021) (quoting Bruce J. Berman & Peter D. Webster, *Berman's Fla. Civ. Proc.* § 1.510:5 (2020 ed.)). In other words, when the evidence from the nonmoving party "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted); *Casey v. Mistral Condo. Ass'n*, 380 So. 3d 1278, 1286 (Fla. 1st DCA 2024).

2

## II.

James argues that the trial court erred in entering summary judgment for Premier because there were genuine issues of material fact as to whether Hernandez was Premier's agent (and thus whether Premier was vicariously liable for Hernandez's actions). James argues that the subcontractor agreement between Premier and Hernandez did not unambiguously show that Hernandez was an independent contractor, and the parties' actual practice and relationship showed instead that Hernandez was Premier's agent.

Under Florida law, a principal is vicariously liable for the negligence of an agent, but not of an independent contractor. *Del Pilar v. DHL Glob. Customer Sols. (USA), Inc.*, 993 So. 2d 142, 145 (Fla. 1st DCA 2008); Fla. Std. Jury Instr. (Civ.) 401.14(b)(1). Whether an agency relationship exists should normally be submitted to the jury and not resolved on a motion for summary judgment. *Saudi Arabian Airlines Corp. v. Dunn*, 438 So. 2d 116, 119 (Fla. 1st DCA 1983). But here, as we will explain, James did not submit significantly probative evidence that Hernandez acted as Premier's agent rather than as its subcontractor.

To determine whether an agency relationship existed between Hernandez and Premier, we consider* Premier's right to control

---

\* James urges this court to determine whether an agency relationship existed here by applying the factors expressed in the Restatement (Second) of Agency. We decline to do so. Although our Supreme Court has cited the Restatement (Second) of Agency at least seven times, it does not appear to have done so since 2003. *See, e.g.*, *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 853 n.10, 854 n.11 (Fla. 2003); *Stoll v. Noel*, 694 So. 2d 701, 703 (Fla. 1997). As the late Justice Scalia admonished, modern editions of the Restatements "are of questionable value, and must be used with caution" because "the Restatements' authors have abandoned the mission of describing the law, and have chosen instead to set forth their aspirations for what the law ought to be." *See Kansas v. Nebraska*, 574 U.S. 445, 475 (2015) (Scalia, J., concurring in part and dissenting in part) (explaining that "[t]he object of the original Restatements was 'to present an orderly

Hernandez, and not Premier's actual control exercised over Hernandez. *See Gradia v. Baptist Hosp., Inc.*, 345 So. 3d 385, 387 (Fla. 1st DCA 2022). "'If the employer's right to control the activities of an employee extends to the manner in which a task is to be performed, then the employee is not an independent contractor,' but rather is an agent for whose negligence the principal is vicariously liable." *Del Pilar*, 993 So. 2d at 146 (quoting *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026, 1027 (Fla. 4th DCA 1993)).

We begin by analyzing the written agreement between Premier and Hernandez, along with the actual relationship between them—not just the labels they use to describe that relationship. *See Del Pilar,* 993 So. 2d at 145–46. Premier is licensed as a certified general contractor. Florida law provides that a general contractor may generally contract for any activity requiring licensure under the statute. *See* § 489.105(3)(a), Fla. Stat. (2023). This includes the "construction, remodeling, repair, or improvement of one-family, two-family, or three-family residences." § 489.105(3)(c), Fla. Stat. Premier is the residential builder for the Fletcher Oaks subdivision in Tallahassee.

Hernandez is a contractor who specializes in painting houses. *See Justice v. Belford Trucking Co., Inc.*, 272 So. 2d 131, 134 (Fla. 1972) (concluding that claimant was an agent rather than an independent contractor because he "had no specialized skill in a distinct occupation, as for example, plastering or plumbing, indicative of an independent contract"). Hernandez owns a separately incorporated business, PWP.

---

statement of the general common law'") (quoting *Introduction* to Restatement of Conflict of Laws, at viii (1934))); *see also* Christopher E. Appel, *The American Law Institute's Impending Credibility Crisis: A Review of Modern Restatements of the Law,* 36 U. Fla. J. L. & Pub. Pol'y 119, 129–32 (2025). Instead, we look to decisions from the Florida Supreme Court, our own court, and other persuasive authority.

The agreement governing the relationship among Premier, Hernandez, and PWP provides that Hernandez is an independent contractor. Several provisions of the agreement similarly reflect an independent contractor-general contractor relationship between the parties. *See McGillis v. Dep't of Econ. Opportunity*, 210 So. 3d 220, 224 (Fla. 3d DCA 2017) (stating that courts honor contract provisions providing for an independent contractor relationship, unless contradicted by other provisions or conduct). Premier did not agree to pay Hernandez a salary or by the hour. Rather, Hernandez was paid one lump sum for an agreed-on price per completed home. Hernandez was required to obtain his own general liability insurance, workers' compensation insurance, and auto liability insurance.

Along with the agreement between the parties, courts must consider the parties' actual practice and relationship to see if the relationship is one of agent and principal or one between a contractor and independent contractor. *Id.* "[A]n independent contractor is a [person][business] who is engaged by another to perform specific work according to [his][her][its] own methods and whose methods of performing the work are not controlled by the person engaging [him][her][it] and are not subject to that person's right of control." *Blue v. Weinert*, 284 So. 3d 1176, 1178 (Fla. 1st DCA 2019) (citing Fla. Std. Jury Instr. (Civ.) 401.14(b)(1)). No reasonable jury could find that Hernandez was not an independent contractor, as the record is devoid of evidence that Premier controlled Hernandez's methods of painting.

James contends that Hernandez was Premier's agent because Hernandez worked almost exclusively for Premier. But the record shows that Hernandez and PWP contracted with and were compensated by other companies and individuals. *Cf. Del Pilar*, 993 So. 2d at 146 (explaining that a company's prohibition against one of its workers from working with competitors suggests an agency relationship). Moreover, Premier contracted with other painters to paint houses in the Fletcher Oaks subdivision.

Hernandez owns PWP and hires and pays his own workers through a payroll company. Premier compensated Hernandez by the square foot, and Hernandez paid his own taxes. *See Messer v. Dep't of Lab. & Emp. Sec.*, 500 So. 2d 1372, 1373 (Fla. 5th DCA

5

1987) (stating that crucial factors pointing toward an independent contractor relationship were being paid on a per-job basis without having taxes withheld).

Hernandez also drove his own truck. The truck was not owned or leased by Premier. Premier did not compensate Hernandez for driving or dictate how he was to get to and from Premier's jobsites. *See Del Pilar*, 993 So. 2d at 146 (stating that requiring a worker to use equipment selected by the employer's specifications suggests an agency relationship). Hernandez purchased his own paint for painting jobs and used his own painting equipment.

Even so, James contends that Premier exercised a high degree of control over Hernandez's painting methods because Premier directed Hernandez regarding when and in which order he should paint homes in the Fletcher Oaks subdivision, along with Premier directing the paint colors that should be used on certain jobs. But none of these actions by Premier points to control over Hernandez's methods of painting rather than control over outcomes. *See Lenox v. Sound Ent., Inc.*, 470 So. 2d 77, 78 (Fla. 2d DCA 1985). Premier's instructions to Hernandez were essential to the work generally assigned by a building contractor to a specialty subcontractor. In its work building residential structures in Fletcher Oaks, Premier would need to coordinate with the myriad subcontractors involved in the construction of a family residence, including plumbers, electricians, brick-layers, tile contractors, flooring contractors, painters, and roofers. To avoid scheduling conflicts and to meet contract deadlines, Premier would need to instruct its subcontractors where and when to perform their work to ensure proper sequencing of construction tasks. And thus it is unsurprising that a residential builder like Premier would specify to its painting subcontractor when work needed to be performed at a particular jobsite, the paint colors to use on certain jobs, and at times the preferred supplier for certain purposes. Specifications of paint colors are common in maintaining uniformity among houses within a subdivision, abiding by association requirements, or complying with contract requirements agreed on by Premier and the home buyers. Hernandez was otherwise free to purchase the paint that fit within his budget and had discretion to select the paint brands he used on Premier's jobs.

James argues that there were times Premier tried to control Hernandez's painting methods. But those circumstances involved specified repairs or requests from homeowners, when such information would be necessary and part of the expected contractor-subcontractor relationship. James also relies on testimony that at one point, Premier trained Hernandez how to paint soffits and fascia. But Premier's allowing one of its employees to provide professional training at Hernandez's request does not convert the building contractor-subcontractor relationship to an agency relationship. *Cf. Del Pilar*, 993 So. 2d at 146 (explaining that requiring a worker to undergo training before working suggests an agency relationship).

In sum, the record evidence established that the relationship between Premier and Hernandez was what would be expected between a residential building contractor and one of its specialty subcontractors—with the builder specifying outcomes, scheduling, and deadlines to the subcontractor. Because James failed to present any significantly probative evidence pointing to Premier's control over Hernandez's method of performing his painting work at Premier's jobsites, the trial court did not err when it granted judgment for Premier.

AFFIRMED.

LEWIS and NORDBY, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Rebecca Bowen Creed of Creed & Gowdy, P.A., Jacksonville; and Robert M. Scott, J. Clint Wallace and Todd C. Hunter Jr. of Scott & Wallace LLP, Tallahassee, for Appellant.

7

Virgil W. Wright, III and Chase A. Fifner of Cameron, Hodges, Coleman, LaPointe & Wright, P.A., Ocala, for Appellee Abraham Hernandez, Jr.

Juliette E. Diaz and Daniel E. Manausa of Manausa, Shaw & Minacci, P.A., Tallahassee, for Appellee Premier Construction-Residential, LLC, d/b/a Premier Fine Homes.

Douglas McAlarney of Douglas McAlarney, Attorney at Law, PLLC, Tallahassee, for Appellee Premier Waterproofing & Painting, LLC.