Gwendolyn WEST, et al., Plaintiffs,

v.

LQ MANAGEMENT, LLC, et al., Defendants.

CASE NO. 14–23087–CIV–ALTONAGA/O'Sullivan

United States District Court, S.D. Florida.

Signed October 30, 2015

---

Nathan Mazique Saunders, Jonathan Edgar Pollard, Jonathan Pollard LLC, Fort Lauderdale, FL, for Plaintiffs.

Harold Wayne Clark, Jr., Carlos A. Garcia, Wicker Smith Tutan O'Hara McCoy Graham & Ford, Jonathon Scott Miller, Fort Lauderdale, FL, Roderick Flynn Coleman, Coleman & Associates, Boca Raton, FL, for Defendants.

### *ORDER*

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court upon two motions for summary judgment (collectively, "Motions"). Defendant, DEV Hospitality, Inc. ("DEV"), filed a Motion for Summary Judgment ... ("DEV Motion") [ECF No. 48] on August 25, 2015. Plaintiffs, Gwendolyn West ("West"), Marla Spence ("Marla"), and Vincent Spence ("Vincent") (collectively, "Plaintiffs"), filed a Response ... ("DEV Response") [ECF No. 64] on September 8, 2015; DEV filed a Reply ... ("DEV Reply") [ECF No. 67] on September 18, 2015. Defendants, LQ Management, LLC ("LQM") and La Quinta Franchising, LLC ("LQF") (collectively, "LQ") filed a Motion for Summary Judgment ... ("LQ Motion") [ECF No. 65] on September 11, 2015. Plaintiffs filed a Response ... ("LQ Response") [ECF No. 71] on September 28, 2015; LQ filed a Reply ... ("LQ Reply") [ECF No. 72] on October 8, 2015. The Court has carefully con-

sidered the parties' written submissions,[1] the record, and applicable law.

## I. BACKGROUND

This case arises out of an incident at a hotel in Clearwater, Florida (the "Hotel" or "Clearwater South"), that ultimately resulted in police involvement and Plaintiffs being forced to leave the Hotel allegedly because of their race. (*See generally* Complaint [ECF No. 1]). Plaintiffs are an African American family. (*See id.* ¶ 1). DEV is a La Quinta franchisee and operates the Hotel. (*See* DEV SMF ¶ 2). LQM manages and operates La Quinta hotels throughout North America. (*See* Compl. ¶ 5). LQF is a separate entity—albeit one which shares the same headquarters (*see id.* ¶¶ 6–7) and at least some employees and executives with LQM (*see* LQ SMF Resp. ¶¶ 24–33)—that directly franchises La Quinta brand hotels to entities such as and including DEV (*see* Compl. ¶ 6; LQ SMF ¶ 3).

On April 26, 2014, West and her two adult children, Marla and Vincent, traveled to Clearwater so Marla—the then—reigning Ms. South Florida—could participate in a beauty pageant. (*See* Compl. ¶¶ 2–4, 29). When Plaintiffs arrived at the Hotel, where they had previously made a reservation, they learned their room was not yet ready but would be soon. (*See* DEV SMF ¶ 3). While they waited, Marla and Vincent went to the business center; West remained speaking with the employee at the front desk, Nancy Saucedo ("Saucedo"). (*See* LQ SMF ¶ 10).

According to Plaintiffs, neither Marla nor Vincent did anything objectionable in the business center. (*See* DEV SMF Resp. ¶¶ 24–34). Defendants' versions of the events assert Marla and/or Vincent were violating un-posted rules by playing music out loud, downloading impermissible materials, using wireless internet in an inconvenient area, and/or preventing other people from using the business center. (*See* DEV SMF ¶ 9; LQ SMF ¶¶ 14–16; LQ SMF Resp. ¶¶ 14–16). The parties also dispute whether Plaintiffs' luggage was taking up space in the business center or was still in their car (*see* Dep. of Erica Ayler ("Ayler Deposition") [ECF No. 63–5] 12:11–15; Decl. of Vincent Spence [ECF No. 63–3] ¶ 46), although it is undisputed one of the reasons West remained with Saucedo at the front desk was to obtain a luggage cart (*see* LQ SMF ¶ 12).

West checked in, paid for the room with a credit card, and was given keys to Plaintiffs' room. (*See* DEV SMF Resp. ¶¶ 11–12). A short time later, Mukund Patel ("Patel"), a principal member of DEV and owner of the Hotel, arrived and entered the lobby. (*See* DEV SMF ¶ 2; LQ SMF ¶ 13). Patel briefly spoke with Saucedo (*see* Compl. ¶ 41), asking a question West was unable to overhear but in response to which Saucedo pointed to West (*see* DEV Resp. 4). Patel then either went straight to the business center (*see id.*) or went to the business center after speaking with Erica Ayler ("Ayler").[2] (*See* LQ SMF ¶ 16).

---

1. DEV also filed a Statement of Material Facts ... ("DEV SMF") [ECF No. 47] on August 25, 2015; Plaintiffs filed a Statement of Material Facts in Opposition ... ("DEV SMF Response") [ECF No. 63] on September 8, 2015. LQ filed a Statement of Material Facts ... ("LQ SMF") [ECF No. 66] on September 11, 2015; and Plaintiffs filed a Statement of Material Facts in Opposition ...

("LQ SMF Response") [ECF No. 70] on September 28, 2015.

2. Ayler is one of Patel's employees who Defendants say was trying to use the business center and witnessed the incident. (*See* LQ SMF ¶¶ 15–16; *see generally* Ayler Dep.). West did not see Ayler, and Plaintiffs dispute whether Ayler authored her own statement or

The parties dispute much of what happened in the business center, but it is undisputed Patel began yelling at Marla and Vincent for being in or misusing the business center. (*See* LQ SMF ¶ 17). West subsequently entered the room because she heard a "loud voice coming from the business center" (*id.* ¶ 18 (internal quotation marks and citation omitted)), and she began to argue with Patel "after the disturbance began" (DEV SMF ¶ 9). Plaintiffs allege Patel accused Plaintiffs of trespassing. (*See* Compl. ¶¶ 46–50). When West said they were paying customers who had already checked in, Plaintiffs allege "Mr. Patel then walked to the front desk and asked the clerk why did she check these kind [sic] of people into his hotel. He then turned back to the family and demanded they leave." (*Id.* ¶ 53). Both parties then called the police who, upon Patel's request as the Hotel's owner, told Plaintiffs they must leave. (*See id.* ¶ 63).

Plaintiffs bring an equal rights claim against DEV and LQ (collectively, "Defendants"), seeking redress for disparate treatment under 42 U.S.C. section 1981 based on Patel's denial of access to the Hotel and business center. (*See* Compl. ¶ 70).

## II. LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff,* 274 Fed.Appx. 839, 841 (11th Cir. 2008) (internal quotation marks omitted)

was even present to witness the events at all. (*See* DEV SMF Resp. ¶¶ 26–27).

(quoting *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997)). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Channa Imps., Inc. v. Hybur, Ltd.,* Case No. 07–21516–CIV, 2008 WL 2914977, at *2 (S.D.Fla. July 25, 2008) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). At summary judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the nonmoving party. *See Allen,* 121 F.3d at 646.

## III. ANALYSIS

DEV makes two arguments in favor of summary judgment: 1) Plaintiffs fail to establish the elements of a *prima facie* case of discrimination under Section 1981; and 2) even if Plaintiffs establish a *prima facie* case, there is a legitimate, non-discriminatory justification for Patel's conduct. (*See generally* DEV Mot.). LQ joins DEV in both arguments. (*See* LQ Mot. 9–17). LQ makes one additional argument: summary judgment is warranted for LQ because DEV is not its agent. (*See id.* 4–9). Plaintiffs argue Defendants apply the incorrect test to analyze a *prima facie* case for discrimination, but assert they can meet even Defendants' incorrect standard because an exception to the normal test is warranted based on the facts of this case. (*See generally* DEV Resp.). Additionally, Plaintiffs argue there are genuine issues of material fact precluding summary judgment on all issues Defendants raise. (*See generally id.*; LQ Resp.).

### A. *Prima Facie* Case for Discrimination[3]

3. Plaintiffs lack direct evidence of racial discrimination; hence, they must prove their

There is disagreement on what Plaintiffs must prove to make a *prima facie* case. The parties agree a plaintiff may establish a *prima facie* case of "disparage [sic] treatment under § 1981" through circumstantial evidence. (DEV Mot. 3 (quoting *Afkhami v. Carnival Corp.*, 305 F.Supp.2d 1308, 1320 (S.D.Fla.2004))). However, the parties disagree on what the circumstantial evidence must show for Plaintiffs "to prove a prima facie case of 'disparent [sic] treatment' discrimination." (*Id.* (citation omitted)).

### 1. The Tests for Disparate Treatment in Public Accommodations

Context determines which of the "many different articulations of the prima-facie case" test applies. *Hall v. Lowder Realty Co., Inc.*, 160 F.Supp.2d 1299, 1314 (M.D.Ala.2001). With only passing reference to context, Defendants assert Plaintiffs must establish: "(1) they are members of a protected class; (2) they attempted to contract for services and to afford themselves the full benefits of enjoyment of a public accommodation; (3) they were denied the right to contract for those services and, thus, were denied those benefits and enjoyment; and (4) similarly situated persons who are not members of the protected class received full benefits or enjoyment, or were treated better." (DEV Mot. 5–6 (citing *Afkhami*; 305 F.Supp.2d at 1322); LQ Mot. 12 (quoting same)). Defendants argue they are entitled to summary judgment because Plaintiffs cannot satisfy the fourth prong—showing similarly situated guests (known as "comparators") were treated differently. (*See* DEV Mot. 6 ("The Plaintiffs in the present case cannot [identify] ... non African–American guests ... who were involved in some

form of incident as alleged in the Plaintiff's [sic] Complaint and who were not removed from the hotel." (alterations added)); LQ Mot. 13).

According to Plaintiffs, Defendants employ "the incorrect standard" because Defendants' test is used only in the employment context. (DEV Resp. 8 (citing DEV Mot. 5–6); LQ Resp. 16). Plaintiffs argue because this is a case of contract discrimination, the Court should use the three-prong test—which lacks a comparator requirement—that some courts apply to discrimination in a contractual relationship or a commercial establishment. (*See id.* 9–10; LQ Resp. 17–18 (quoting *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 870–71 (6th Cir.2001))).

While there is a contract at issue, this case unequivocally involves alleged discrimination in a place of public accommodation. *See* 42 U.S.C. § 2000a(a)(1) (including "any inn, hotel, motel, or other establishment which provides lodging to transient guests" on the list of establishments which qualify as "a place of public accommodation within the meaning of this subchapter."). And while context determines the test to apply, that this is a public accommodation case still does not clarify what test applies because the Eleventh Circuit has not concretely explicated the elements of a public accommodation discrimination claim.

Some courts have held Defendants' four-factor test is properly applied to public accommodation cases. *See LaRoche v. Denny's, Inc.*, 62 F.Supp.2d 1366, 1370 (S.D.Fla.1999) ("Public accommodation and Section 1981 claims ... apply the same prima facie standards and burdens of proof as do employment discrimination claims under Title VII." (alteration added; cita-

---

claim with circumstantial evidence, which uses the evidentiary framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), further

addressed herein. *See Carter v. Three Springs Resid. Treatment*, 132 F.3d 635, 641–43 (11th Cir.1998).

tions omitted)); *see also Afkhami*, 305 F.Supp.2d at 1322; *Solomon v. Waffle House, Inc.*, 365 F.Supp.2d 1312, 1331 (N.D.Ga.2004). Other courts, as Plaintiffs note, have looked to the Sixth Circuit for guidance. The Sixth Circuit acknowledged providing a comparator is not always reasonably possible in cases outside the employment context, and laid out a different test for a *prima facie* case in non-employment discrimination. *See Christian*, 252 F.3d at 872. This test requires:

(1) plaintiff is a member of a protected class;

(2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and

(3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id.* Under this formulation, outward hostility or other evidence of discrimination can establish the same prong of a prima facie case as does a comparator. *See id.* at 873.

In the absence of binding precedent from the Eleventh Circuit, a number of district courts have adopted this test for public accommodation discrimination. *See, e.g., Brooks v. Collis Foods, Inc.*, 365 F.Supp.2d 1342, 1354–57 (N.D.Ga.2005) (noting "requiring similarly situated comparators in the employment context was appropriate because of the regulated nature of employment decisions ... for which records are usually kept" in contrast to commercial or retail establishments, where "the clientele is largely itinerant") (citing *Christian*, 252 F.3d at 871; *Call-*

*wood v. Dave & Buster's, Inc.*, 98 F.Supp.2d 694, 706 (D.Md.2000)). Others have criticized prong (3)(b) of the *Christian* test, while acknowledging the absence of a "readily applicable test" for discrimination claims involving denial of services in retail establishments. *See, e.g., Benton v. Cousins Props., Inc.*, 230 F.Supp.2d 1351, 1378 (N.D.Ga.2002). The Eleventh Circuit has not adopted the *Christian* test, but it has cited it without disapproval—suggesting evidence of hostility or abusive language may serve the same purpose as a comparator in cases outside the employment context. *See Allen v. CLP Corp.*, 460 Fed.Appx. 845, 848 (11th Cir.2012) (citing *Christian*, 252 F.3d at 871).

The primary difference between these tests is whether or not they require a comparator; the remaining elements track closely. *Compare Christian*, 252 F.3d at 872, *with Afkhami*, 305 F.Supp.2d at 1322. Defendants challenge Plaintiffs' *prima facie* case only on the ground Plaintiffs fail to provide a comparator (*see* LQ Mot. 13), so one might assume the choice of test would be determinative here. That is not the case, because while it is unclear what test should apply in this Circuit, it is abundantly clear any test for discrimination is meant to be flexible. *See McDonnell Douglas Corp.*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts ... will vary in Title VII cases, and the specification ... of the prima facie proof required .... is not necessarily applicable in every respect to differing factual situations." (alterations added)). As a result, the Court does not resolve what test applies because it finds the outcome for the Motions at issue is the same under a flexible application of the described tests.

### 2. The Tests for *Prima Facie* Discrimination Are Flexible

■ Plaintiffs argue if the Court applies a test with a comparator requirement, an

exception to that requirement is warranted: "Even where a *prima facie* case generally requires proof of similarly situated individuals, as in the employment context, there are exceptions." (DEV Resp. 9 (citing *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1540 (11th Cir.1988); *Stevens v. Steak n Shake, Inc.*, 35 F.Supp.2d 882, 887 (M.D.Fla.1998))). Indeed, "[t]he United States Supreme Court and the Eleventh Circuit Court of Appeals have repeatedly emphasized that the requisite showings that make up a *prima facie* case are not meant to be rigid or inflexible." *Sims v. Coosa Cnty. Bd. of Educ.*, No. 2:07cv704–MEF, 2008 WL 4080769, at *7 (M.D.Ala. Sept. 2, 2008) (alteration added) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir. 1999) (collecting cases)) (other citations omitted). "The 'factual inquiry' for Section 1981 is 'whether the defendant intentionally discriminated against the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089).

Defendants do not rebut the assertion an exception is warranted. Instead, they argue Plaintiffs' reliance on circumstantial evidence triggers the *McDonnell Douglas* burden-shifting framework, which Defendants state—without support—mandates use of the four-factor test (presumably without exception). (*See* LQ Reply 5 ("Apparently recognizing their lack of a comparator, Plaintiffs state the Eleventh Circuit does not require a comparator in order to survive a motion for summary judgment. However, the Eleventh Circuit has remained steadfast that '[w]hen, as here, a claim of racial discrimination under 42

U.S.C. § 1981 is based solely on circumstantial evidence, we apply the familiar burden-shifting framework established for Title VII claims in *McDonnell Douglas Corp. v. Green.'*" (alteration in original; internal citation omitted) (quoting *Stanislaus v. Emory Univ.*, 255 Fed.Appx. 459, 460 (11th Cir.2007))); *see also* DEV Reply 2).

 The *McDonnell Douglas* burden-shifting analysis has no bearing on what elements a plaintiff is required to prove. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference [of discrimination]." (alteration added)). As stated, *McDonnell Douglas* recognized the flexibility of these tests and specifically stated its formulation was not applicable in every case.[4] *See* 411 U.S. at 802 n. 13, 93 S.Ct. 1817. An exception may be warranted here based on the specific facts of this case.

3. Plaintiffs Make Out a *Prima Facie* Case Without a Comparator

 Analyzing a *prima facie* case under Section 1981 "is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Using the flexible, common-sense approach the Supreme Court intended, "[a] prima

---

4. By suggesting the application of *McDonnell Douglas* settles the question of which test to use and requires a comparator, Defendants appear to make the same conceptual mistake DEV accuses Plaintiffs of making. (*See* DEV Reply 1 ("The Plaintiff's [sic] response confuses the difference between the elements of a cause of action under § 1981 and how such a claim may be proven.")).

facie case of disparate treatment can be established by any 'proof of actions taken ... from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations.'" *Hill*, 841 F.2d at 1540 (alterations added) (quoting *Furnco*, 438 U.S. at 580–81, 98 S.Ct. 2943); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997) ("Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." (citations omitted)).

■ As shown by the plentiful factual disputes in this case, Plaintiffs clearly establish the non-comparator prongs of the four-factor employment test [5] and all three elements of the *Christian* test: 1) they are members of a protected class; 2) they attempted to contract for services and to afford themselves the full benefits of enjoyment of a public accommodation; and (3) they were denied the right to contract for those services and therefore were denied those benefits and enjoyment with hostility and disputed potential discriminatory intent. *See Afkhami*, 305 F.Supp.2d at 1322; *Christian*, 252 F.3d at 872. Using a test with a comparator requirement, and drawing all factual inferences in Plaintiffs' favor,[6] Patel observed paying, African American guests minding their own business and decided they needed to be removed because, as he repeatedly stated, he did not want "their kind [sic] of people in his hotel." (Compl.¶¶ 41–58). These facts

satisfy Plaintiffs' preliminary burden under *McDonnell Douglas*, because without explanation, they support a reasonable inference of discriminatory animus. *See Hill*, 841 F.2d at 1540.

Plaintiffs do not (*see* LQ Resp. 18–19), and it appears cannot, provide a comparator.[7] As Defendants acknowledge (*see* DEV Mot. 6; LQ Mot. 13), to require a comparator in this case would effectively bar Plaintiffs' claim—even if every disputed fact of discrimination Plaintiffs present is true. Such an outcome, inflexibly denying Plaintiffs' otherwise plausible claim of discrimination for want of a comparator, "finds no support in either the nature of the prima facie case or in the purpose of Title VII." *Furnco*, 438 U.S. at 577, 98 S.Ct. 2943 (granting an exception to the second factor for *prima facie* employment discrimination).

In sum, regardless of which test the Court uses, Plaintiffs can and do make out a *prima facie* case for discrimination.

**B. Legitimate Non–Discriminatory Explanation**

■ Once Plaintiffs establish a *prima facie* case for discrimination, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the challenged action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. However, "[a] defendant who puts forward only reasons that are subject to reasonable disbelief in light of the evidence faces having its true motive determined by a jury." *Combs v. Plantation Patterns*, 106 F.3d

---

5. LQ overtly concedes as much, at least for the purpose of summary judgment (*see* LQ Mot. 13), and DEV never references any prong other than the comparator requirement.

6. Unlike in *Afkhami*, the material facts of this case are highly disputed. *See* 305 F.Supp.2d at 1322–23.

7. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.2004) ("The comparator must be nearly identical to the plaintiff ...." (alteration added; citation omitted)).

1519, 1537 (11th Cir.1997) (alteration added).

■ Defendants argue summary judgment is warranted even if Plaintiffs· have made a *prima facie* case because Patel's actions were simply a reaction to "the disturbance" Plaintiffs created.[8] (DEV Mot. 6). This argument hinges on the assumption Plaintiffs "created a disturbance" (LQ Mot. 14), but it is not even clear Plaintiffs caused the disturbance Defendants argue—and Plaintiffs dispute—led to Plaintiffs' removal.[9] The parties dispute virtually every aspect of the so-called disturbance, including why Patel went into the business center; how, if at all, Plaintiffs were misbehaving; and what Patel said to Plaintiffs. (*See* DEV SMF Resp. ¶¶ 31–38). Counsel should know it is inappropriate for the Court to make a ruling as a matter of law with any, no less so many, of the basic material facts in dispute. *See Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993) ("The court may not weigh evidence to resolve factual disputes—if a genuine issue of material fact is found, summary judgment must be denied." (citation omitted)).

Further, beyond the relevant factual disputes, Plaintiffs catalogue a number of concerning statements by Ayler, and numerous internal and external inconsistencies with even Patel's version of the events. (*See* DEV Resp. 11–21). LQ states "the district court's task is to evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [alleged discriminator]'s proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" (LQ Mot. 15 (alteration in original) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir.1996))). Between the highly disputed material facts and the glaring inconsistencies within and between the statements of Ayler and Patel, Defendants' theory is "subject to reasonable disbelief." *Combs*, 106 F.3d at 1537.

## C. Actual or Apparent Agency Relationship

■ Plaintiffs argue franchisor LQ is liable because DEV is an actual or apparent agent of LQ. (*See* Compl. ¶ 25). "The existence of an agency relationship is normally one for the trier of fact to decide." *Villazon v. Prudential Health Care Plan, Inc.*, 843 So.2d 842, 853 (Fla.2003) (citation omitted). Nevertheless, "[o]rdinarily, a franchisor is not liable for the actions of an independent contractor." *Howell v. Chick–Fil–A, Inc.*, No. 92–30188–RV, 1993 WL 603296, at *2 (N.D.Fla. Nov. 1, 1993)

---

8. Beyond the verbal argument, LQ argues the fact West called the police is sufficient to show she caused a disturbance (*see* LQ Reply 6 n.2), but Plaintiffs state West called police out of concern for her family's safety around Patel (*see* Compl. ¶ 57).

9. Patel stated "he began to advise Vincent Spence ... at which time Vincent Spence became very upset and a disturbance followed." (Aff. of Mukund Patel ... [ECF No. 46–1] ¶ 5 (alteration added)). Yet according to LQ, "rather than provide Mr. Patel courtesy of an answer to his query, both Mr. Spence and Ms. Spence decided to ignore Mr. Patel." (LQ Reply 6 n.2 (record citations omitted)).

Defendants argue Plaintiffs were asked to leave only because they caused a "disturbance in the business center." (DEV Reply 3). A reasonable fact-finder could conclude Patel entered the business center and responded to an uneventful situation (*i.e.*, Marla and Vincent's silence) by yelling, thereby creating the disturbance himself. At a minimum, there are disputed issues of material fact regarding not only whether and how Plaintiffs caused a disturbance, but also whether that "disturbance" is only a pretext for Patel's actions. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

(alteration added). The Florida Supreme Court has recognized the franchise context requires an enhanced showing of agency: "Franchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities." *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120 (Fla.1995). The question, then, is whether undisputed facts demonstrate LQ's actual or apparent authority extends beyond ordinary contractual franchise support activities.

### 1. Actual Agency

■ LQ argues "there is no reason to depart from the general rule" franchisees are not actual agents because the Franchise Agreement [ECF No. 51–1] expressly states DEV is an independent contractor. (LQ Mot. 5). This is unremarkable, as the descriptive labels the parties use are not determinative. *See Parker v. Domino's Pizza, Inc.* 629 So.2d 1026, 1027 (Fla. 4th DCA 1993).

■ LQ next argues what control it has over DEV is merely "a mandatory part of any franchise system," and the "only real 'control' LQF could exert over DEV Hospitality (and Mr. Patel) is to terminate the Franchise Agreement for noncompliance with those requirements." (LQ Mot. 6 (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir.1991) (holding no agency relationship was formed because a franchisor's only real control was to terminate the franchise relationship))). Plaintiffs dispute this characterization of the relationship and many

other aspects of LQ's authority over DEV (*see* LQ Resp. 6): "La Quinta'[s] own documents demonstrate that a finder of fact could conclude that an agency relationship exists." (*Id.* 4 (alteration added)). Plaintiffs list provisions of the Franchise Agreement they argue show DEV is not an independent contractor. (*Id.* 6–7 (applying the test in *Del Pilar v. DHL Global Customer Solutions (USA), Inc.*, 993 So.2d 142, 146 (Fla. 1st DCA 2008))). Plaintiffs also cite numerous provisions of the "System Manual"—"all of which" by LQ's terms "may be changed by us at our option." (*Id.* 9 (citation omitted)). These provisions are relevant because in this inquiry, a court examines the principal's authority over the potential agent, not the level of control actually exerted. *See Parker*, 629 So.2d at 1027.

Neither party presents a close enough or controlling factual analogue to allow the Court to rule on this issue as a matter of law. In evaluating Defendants' Motions, this uncertainty resolves in Plaintiffs' favor. *See Allen*, 121 F.3d at 646. While Plaintiffs may face an uphill battle to show DEV was either or both of the LQ entities' actual agent, there is a genuine dispute as to whether the myriad provisions Plaintiffs cite—in the multiple documents governing the relationships between the various parties [10]—fall within or beyond the level of ordinary franchise support. *See Villazon*, 843 So.2d at 853 ("While an evaluation of a single contract may be a question of law to be determined by the court, when there are multiple relationships along with multiple practices and procedures to be evaluated, and the totality of the evidence is susceptible to multiple inferences and interpretations, the existence and scope of

---

**10.** LQ argues a distinction between its individual entities, LQM and LQF, further precludes LQM from being DEV's principal. (*See* LQ Mot. 7 n.2). Plaintiffs argue there

are disputed issues of fact here as well, because LQM and LQF share employees and management. (*See* LQ Resp. 14–15).

an agency relationship are generally questions of fact.").

### 2. Apparent Agency

■ In Florida, "an apparent agency exists only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Bransford*, 648 So.2d at 121 (citations omitted). As with actual agency, LQ cites and analogizes to a number of cases (*see* LQ Reply 2–5), but the cases are factually distinguishable.[11]

■ On the facts, LQ argues the "only evidence of apparent agency ... is that the La Quinta website Ms. Spence booked the reservation through did not affirmatively state the Clearwater South was owned and operated by a franchisee." (LQ Mot. 7). According to LQ, that is "not enough" because of the modern "common knowledge" presumption, which assumes the public knows a normal franchise relationship is not an agency relationship, and therefore requires a plaintiff show a franchisor made a representation "that goes beyond the basic franchise relationship by indicating that the franchisor was in substantial control of the business." (*Id.* 7–8 (quoting *Cain*, 994 F.Supp.2d at 1253 (emphasis omitted))).

Plaintiffs argue the presumption is not triggered here because Plaintiffs were not on notice the Hotel was a franchise. (*See* LQ Resp. 12). Plaintiffs explain—and LQ

concedes (*see* LQ Mot. 8)—even if Plaintiffs had notice LQ offered franchising opportunities, there was nothing in DEV's interaction or representations to Plaintiffs to indicate the Hotel was not owned and operated by LQ (*see* LQ Resp. 12). After all, roughly three quarters of LQ properties in Florida are not franchises, and Plaintiffs state they received a confirmation email directly from LQ[12] describing the treatment of "our customers." (*Id.* (citation omitted)). LQ disputes some of the facts on which Plaintiffs rely, but these disagreements only serve to emphasize genuine issues of fact remain as to whether LQ created the appearance of an agency relationship. Therefore, as is often the case, the question of apparent agency is left to the jury. *See Villazon*, 843 So.2d at 853.

## IV. CONCLUSION

In the DEV Motion, DEV argues, "The Plaintiff's [sic] Complaint relies upon a series of statements allegedly made by Mukund Patel, which are disputed by this Defendant...." (DEV Mot. 2 (alteration added)). One sentence later, DEV writes, "This Defendant moves for summary judgment as there is no issue of any material fact...." (*Id.* (alteration added)). Given that, in DEV's own words, Plaintiffs rely on Patel's statements—which are at the heart of this case—and Defendants dispute them, there are clearly genuine issues of material fact. The same is true for material facts underlying every argument made

---

11. *See, e.g., Cain v. Shell Oil Co.*, 994 F.Supp.2d 1251 (N.D.Fla.2014) (gas station franchisee operating under different name than franchisor); *Muminov v. Muniraj Enters., Inc.*, No. 6:11–cv–969–Orl–31GJK, 2012 WL 760638 (M.D.Fla. Mar. 8, 2012) (hotel franchisee operating under different name than franchisor); *Estate of Miller v. Thrifty Rent–A–Car Sys., Inc.*, 637 F.Supp.2d 1029 (M.D.Fla.2009) (car rental company operating under different name than franchisor and

placing own trademarks next to franchisor's); *Bransford*, 648 So.2d 119 (no representation by principal beyond use of franchisor's marks).

12. LQ explains "the reservation number provided by Ms. Spence leaves no doubt Ms. Spence's reservation was made directly with the property" (LQ Reply 4 n.1 (citation omitted)), but this resulting disputed fact underscores the need to try the issue to a jury.

by DEV and LQ. Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. DEV's Motion [ECF No. 48] is **DENIED.**

2. LQ's Motion [ECF No. 65] is **DENIED.**

**DONE AND ORDERED** in Miami, Florida, this 30th day of October, 2015.